# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMEN RABB,<br><br>        Petitioner,<br><br>        v.<br><br>M. ELIOT SPEARMAN, Warden,<br><br>        Respondent. | Case No. CV 17-9318-JAK (JPR)<br><br>ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE |

The Court has reviewed the Successive Petition, records on file, and Report and Recommendation of U.S. Magistrate Judge, which recommends that Respondent's motion to dismiss the Successive Petition be granted. Petitioner filed objections to the R. & R. through counsel on December 2, 2019, and two pro se letters asserting his innocence, on October 1 and December 11, 2019; Respondent did not reply. Having reviewed de novo those portions of the R. & R. to which Petitioner objects, see 28 U.S.C. § 636(b)(1)(C), the Court accepts the findings and recommendations of the Magistrate Judge.

Petitioner challenges the Magistrate Judge's analytical approach in determining that the Successive Petition should be dismissed because none of its claims meet the requirements of 28

U.S.C. 2244(b). According to Petitioner, because the Ninth Circuit already "saw fit to send the case back" to the district court (Objs. at 7), the Magistrate Judge had no business reviewing the record as if she were an "appellate court," drawing inferences from the record, assessing the strength of the evidence of his guilt, or "posit[ing] abstract doubts regarding the veracity or trustworthiness of the evidence [he] submitted" (id. at 4, 7).

But the Magistrate Judge's thorough examination of the record to determine whether Petitioner met § 2244(b)'s dictates was not just warranted but required. It is a "misnomer" to say that the Circuit "grants leave to file" a successive petition after it finds that an application makes a prima facie showing under § 2244(b). Edwards v. Koehn, No. CV 14-00390 VBF-SH, 2014 WL 11980006, at *2 n.1 (C.D. Cal. Apr. 14, 2014). A prima facie showing is "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." Woratzeck v. Stewart, 118 F.3d 648, 650 (9th Cir. 1997) (per curiam) (citation omitted). The district court then "must," as the Magistrate Judge did here, "conduct a thorough review of all allegations and evidence presented by the prisoner to determine whether the [petition] meets the statutory requirements." United States v. Villa-Gonzalez, 208 F.3d 1160, 1165 (9th Cir. 2000) (per curiam); see § 2244(b)(4) (providing that "district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the application satisfies the requirements of this section"). In doing so, it "must not defer

2

to [the circuit court's] preliminary determination." Case v. Hatch, 731 F.3d 1015, 1029 (10th Cir. 2013).

Petitioner's objections to the Magistrate Judge's findings, many of which simply reiterate arguments he raised in the Successive Petition and his opposition to the motion to dismiss, are not persuasive. Although he takes issue with practically all of the R. & R.'s footnotes — which by their nature are not critical to the analysis — he does not challenge many of the Magistrate Judge's key conclusions in finding that he has not acted diligently in bringing his claims and that the facts underlying those claims, even if true, would not establish his actual innocence. § 2244(b)(2)(B).

For instance, he does not anywhere dispute that the Successive Petition's fourth claim must be dismissed because it was already raised in his initial Petition. (See R. & R. at 28-30 (citing § 2244(b)(1)).) Nor does he address the Magistrate Judge's conclusion that many of his ineffective-assistance subclaims, including those concerning counsel's failure to object to hearsay testimony, move to prohibit reference to the guns recovered from the Camry, or seek to introduce Petitioner's girlfriend's 2007 statement to the defense investigator, must be dismissed because they are based on factual predicates that were known to him at the time of trial. (See id. at 31-38.)

Petitioner repeatedly references Farmer's and Chappell's 2016 statements that Petitioner was not the man who robbed them as new evidence supporting his actual innocence (see, e.g., Objs. at 1, 23-24, 29-31), but he does not convincingly object to the Magistrate Judge's finding that he "was or should have been

3

aware" much earlier of the substance of those statements (R. & R. at 35). He argues that they are not the same as their 2007 statements that they could not identify him as the robber in a photo lineup (see Objs. at 24), but he does not dispute that the 2007 statements, which were discussed during trial in his presence, put him on notice that Farmer and Chappell potentially had more exculpatory identification information to provide (see id. at 34-37).[1]

And although the Magistrate Judge pointed out in a footnote that the record was unclear on whether Petitioner's photograph was even included in the 2007 photo lineup (see Objs. at 8 (citing R. & R. at 16 n.4)), her analysis makes plain that she assumed it was — and that the lineup therefore put Petitioner on

---

[1] The Magistrate Judge also correctly observed that the victims' 2007 statements would not likely have been admitted at trial (see R. & R. at 50 n.22) and that it was unclear how counsel could have been ineffective for allegedly not obtaining the information shared by them in 2016 when he requested and received court authorization for an investigator and sent that investigator to speak to them back in 2007 (see id. at 46 n.20). Further, just as in Gentry v. Sinclair, 705 F.3d 884, 899-900 (9th Cir. 2012) (as amended Jan. 15, 2013), Petitioner submitted evidence concerning trial counsel's strategy only on certain subclaims — here, in the form of habeas counsel's declaration conveying trial counsel's answers to questions habeas counsel asked him during several interviews (see Opp'n, Ex. 15) — but no evidence as to other subclaims, likely because habeas counsel didn't ask him about them. That may well bar those subclaims, as the Magistrate Judge noted. (See R. & R. at 32 n.12 (citing Gentry, 705 F.3d at 899-900), 34 n.14 (same).) Petitioner now asserts that unlike in Gentry, trial counsel refused to submit a declaration or to "speak with habeas counsel further about the case" (Objs. at 10), but that information is not in his declaration, and although trial counsel apparently could not recall many of the "strategies related to the issues . . . raised," he at least initially cooperated with habeas counsel (Opp'n, Ex. 15 at 5-7).

notice of any potential claims stemming from the victims' inability to identify him in it.  Of course, as the Magistrate Judge pointed out (see R. & R. at 36), the best evidence that Petitioner was in fact on notice of those claims is that immediately after being appointed and years before the victims made their 2016 statements, habeas counsel filed a superior-court habeas petition raising most of the Successive Petition's claims (see generally Lodged Doc. 21).

Petitioner identifies three factual predicates that he claims the Magistrate Judge incorrectly determined he could have discovered before he filed the initial Petition.  First, he asserts that he could not have earlier known that trial counsel allegedly failed to watch a surveillance videotape collected from the crime scene and so learned only several years after the initial Petition was filed, when habeas counsel interviewed trial counsel.  (Objs. at 11-12.)  But as Petitioner has acknowledged (see Opp'n, Ex. 15 at 6) and the Magistrate Judge outlined (see R. & R. at 33), although trial counsel told habeas counsel during that interview that "he was not aware of any surveillance tape and . . . never viewed it or sought to view it" (Opp'n, Ex. 15 at 6), the record makes plain that he in fact knew about it before trial (see, e.g., Lodged Doc. 2, 3 Rep.'s Tr. at 1335).  His cross-examination of a police witness at trial made clear that he knew of the surveillance tape, and the particular questions he asked suggested that he had watched it.  (See R. & R. at 33 (citing Lodged Doc. 2, 3 Rep.'s Tr. at 1335).)  Thus, there is no credible newly discovered evidence that trial counsel never watched the surveillance tape.  Rather, he just didn't remember,

5

seven years later, what had happened at trial. (See Opp'n, Ex. 15 ¶ 13 (habeas counsel noting that trial counsel said he could not remember much about Petitioner's trial).) In any event, Petitioner was clearly aware of the facts underlying this ineffective-assistance subclaim when he filed his initial Petition and yet failed to raise it, instead claiming that his counsel allegedly never watched the tape because the prosecution didn't produce it in discovery. (See Objs. at 12.)

Second, Petitioner claims the Magistrate Judge misapplied relevant law in finding that he could have earlier challenged trial counsel's failure to procure the testimony of an eyewitness-identification expert. (Id. at 19-23.) The Magistrate Judge did not "create[] a higher standard for [Petitioner]" or find that "a petitioner must instruct their counsel on how to do their job as counsel or they cannot have been diligent." (Id. at 20.) Rather, her analysis correctly noted that Petitioner's claim boiled down to counsel allegedly having been ineffective for failing to ask the expert whether he would have accepted less to testify. (See R. & R. at 42-44.) And she correctly concluded that Petitioner, who was present during the court's colloquies with counsel about the expert's fee and aware that counsel believed he would not be able to testify because his full fee had not been authorized, could have — just as habeas counsel did after being appointed — discovered, or at least tried to, that the expert would have accepted less and challenged counsel's effectiveness for not asking him to do so.[2]

---

[2] Petitioner has never cited any authority to support his
(continued...)

(Id.)

The Magistrate Judge also properly distinguished Rudin v. Myles, 781 F.3d 1043 (9th Cir. 2015), on which Petitioner relies. (See Objs. at 20-22.) As an initial matter, Rudin has nothing to do with successive petitions or the standards governing them. Moreover, as the Magistrate Judge explained (see R. & R. at 44 n.19), the Ninth Circuit held in that case that the petitioner was entitled to equitable tolling of the AEDPA limitation period because she could have raised her ineffective-assistance claim only after learning of and being prejudiced by counsel's abandonment of her, 781 F.3d at 1054 n.13. That holding does not help Petitioner because he was prejudiced by counsel's alleged deficiencies when he was convicted and therefore could have raised his ineffective-assistance claim immediately thereafter. See Gimenez v. Ochoa, Civil No. 12-1137 LAB (BLM)., 2013 WL 8178829, at *5 (S.D. Cal. Nov. 22, 2013) (finding § 2244(b)'s due-diligence requirement not satisfied when petitioner had been aware since trial of counsel's failure to have radiologist testify concerning certain evidence), accepted by 2014 WL 1302463 (S.D. Cal. Mar. 28, 2014), aff'd, 821 F.3d 1136 (9th Cir. 2016).

---

[2](...continued)
suggestion that trial counsel, who informed the court of the expert's fee but was not granted the full amount requested, performed deficiently in not negotiating with the expert to take less. Counsel's failure to do so, when no evidence shows that the expert had ever even suggested he would consider a lower fee, did not likely "f[a]ll below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984); see Babbitt v. Calderon, 151 F.3d 1170, 1174 (9th Cir. 1998) (finding that counsel's failure to consult with certain experts was not unreasonable when experts he did retain did not tell him to do so).

Petitioner claims the Magistrate Judge misconstrued Rudin because the case is not about "learning of prejudice, but experiencing it." (Objs. at 21.) The Court is not certain what semantic difference Petitioner seeks to draw, but in any event, he "experienced" prejudice when he was convicted after no identification expert testified at trial.

Finally, Petitioner claims the Magistrate Judge wrongly decided — based on Chappell's 2007 statement that he wasn't scared during the robbery — that he was on notice from before his conviction that police descriptions of the victims as being scared and agitated immediately after the robbery were allegedly inaccurate. (Id. at 12-13.) The Magistrate Judge rightly concluded that Chappell's 2007 denial of being scared during, as opposed to immediately after, the robbery should have alerted him to the claim. Indeed, Chappell himself spoke of one continuous time frame, claiming in 2016 that it was "completely untrue" that he was "under stress and acting excited" when talking to the police a few minutes after the robbery because he had had "plenty of guns pulled on [him] before." (Opp'n, Ex. 11 at 1.)

And if Chappell wasn't afraid during the robbery, as he said in 2007, he presumably would have had no reason to be right after it either, calling into question the officers' testimony to the contrary. As the Magistrate Judge pointed out (see R. & R. at 40), the best evidence that Chappell's 2007 statement put Petitioner on notice of his claim is habeas counsel's argument in a superior-court petition filed years before Farmer's and Chappell's 2016 statements that trial counsel should have used Chappell's statement about not being scared to prevent his crime-

scene statements to the police officers from being admitted into evidence as excited utterances.[3] (See Lodged Doc. 21 at 18, 21-22.)[4] Therefore, contrary to Petitioner's suggestion (Objs. at 14-15), the Magistrate Judge properly determined that Hasan v. Galaza, 254 F.3d 1150, 1154 (9th Cir. 2001), holding as to an initial, not a successive, petition that a petitioner could not have discovered an ineffective-assistance claim until he was aware of the prejudice he had allegedly suffered, was inapposite.

---

[3] Petitioner claims, without any evidence or citation to supporting authority, that a "victim might experience psychological shock when facing a gun, but then deal with the flood of repressed emotions once the dangerous situation abated" and therefore "there was no reason to disbelieve [the officers'] testimony" that Chappell was "emotionally agitated" when he spoke to them despite his 2007 statement that during the robbery itself he wasn't scared. (Objs. at 14.) But Petitioner clearly was earlier aware of his claim because he raised it in the state petition years before his initial federal Petition and the victims' 2016 statements.

[4] Petitioner argues that the Magistrate Judge failed to appreciate that he was not in a position to conduct the sort of investigation necessary to uncover most of his claims. (Objs. at 16-18.) But as discussed, he possessed most of the information he needed to challenge counsel's effectiveness when he filed the initial Petition. Further, although his pro se status certainly hampered his ability to reach out to Farmer and Chappell, he was not without options. For example, he could have asked a family member or friend to contact them. Beyond that, courts have not excused the failure to exercise due diligence based on a petitioner's pro se status, including in cases when a petitioner has not timely obtained statements from codefendants or witnesses. See, e.g., Johnson v. Williams, 650 F. App'x 508, 511 (9th Cir. 2016) (holding that petitioner failed to make prima facie showing of diligence when he did not satisfactorily explain delay in obtaining codefendant's declaration); Gant v. Barnes, No. CV 14-2618-CJC (SP), 2017 WL 3822063, at *7 (C.D. Cal. July 19, 2017) ("Petitioner's inability to locate, rather than discover [alibi] witnesses due to his previous pro se litigant status does not undermine the conclusion that he knew the factual predicate for his IAC claim by the conclusion of his trial.").

9

(See R. & R. at 40-41); West v. Ryan, 652 F.3d 1071, 1078 (9th Cir. 2011) (denying application for leave to file successive petition because evidence of abuse was not "newly discovered" given that petitioner's counsel was aware "of at least some of the allegations" when petitioner filed his first state habeas petition).

Petitioner suggests he exercised due diligence in presenting his claims because habeas counsel filed an unsuccessful motion to stay the appellate proceedings based on newly discovered evidence, see Mot., Rabb v. Sherman, No. 13-55057 (9th Cir. June 20, 2014), ECF No. 29, and an unsuccessful motion under Crateo, Inc. v. Intermark, Inc., 536 F.2d 862 (9th Cir. 1976), asking this Court to indicate that it would "entertain or grant" a Rule 60(b) motion for relief from judgment based on newly discovered evidence in the event the Ninth Circuit remanded the case, see Mot., Rabb v. Lopez, No. CV 11-5110-JAK (JPR) (C.D. Cal. Dec. 21, 2014), ECF No. 63. (See Objs. at 21.) But those motions were filed after this Court had denied the initial Petition, and it is well settled that in those circumstances a petitioner seeking to "present newly discovered evidence" or "add a new ground for relief" must satisfy § 2244(b)'s requirements to file a successive petition and cannot raise the claim in a Rule 59(e) or 60(b) motion. Rishor v. Ferguson, 822 F.3d 482, 491 (9th Cir. 2016) (citing Gonzalez v. Crosby, 545 U.S. 524, 531 (2005)). Counsel's having filed stay motions that were almost certain to, and did, fail does not demonstrate diligence.

Even if any of Petitioner's claims could not have been discovered earlier, the Magistrate Judge correctly found that

"the facts underlying [them], if proven and viewed in light of the evidence as a whole," would be "[in]sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [Petitioner] guilty of the underlying offense." (R. & R. at 46 (citing § 2244(b)(2)(B)(ii)).)[5] Petitioner cannot seriously contend that the surveillance video or the eyewitness-identification expert's testimony would have established that he was actually innocent. He presents no nonspeculative basis to question Detective Williams's testimony that no particular person or vehicle in the video could be identified. (See id. at 12 n.3, 33 (citing Lodged Doc. 2, 3 Rep.'s Tr. at 1328-29).) Indeed, he elsewhere proffers Williams's testimony as being truthful, noting that he specifically declined to label Petitioner a gang member. (Objs. at 39.) And although the expert's testimony would have served to undermine Banuelos's identification of Petitioner, that identification was already called into question by trial counsel's extensive cross-examination about its circumstances and the inconsistencies in it (see R. & R. at 55-56 (discussing counsel's cross-examination)), as Petitioner acknowledges (see Objs. at 44-49, 51-53), and nonetheless was credited by the jury.

---

[5] The Magistrate Judge did not hold Petitioner to an improperly high "unquestionably" innocent standard. (See Objs. at 43-44.) She noted that standard — which governs a stand-alone actual-innocence claim in a successive petition (see R. & R. at 50 (citing Morales v. Ornoski, 439 F.3d 529, 533-34 (9th Cir. 2006) (per curiam))) — most likely because Petitioner in fact raised such a claim in the Successive Petition, although he later clarified that he did not seek relief on it (see Opp'n at 6). She elsewhere consistently applied § 2244(b)(2)(B)(ii)'s actual-innocence standard in recommending dismissal of Petitioner's claims. (See, e.g., R. & R. at 25-26, 46, 61.)

11

The crux of Petitioner's actual-innocence claim and his objections to the Magistrate Judge's analysis of it is that she undervalued the significance of the victims' 2016 statements that the police officers' testimony about their emotional state was untrue. According to Petitioner, that testimony would have prevented admission of their crime-scene statements to the officers as excited utterances and established that the officers were lying. (Objs. at 15.) But as the Magistrate Judge explained, that the victims claimed they were not scared would not likely have resulted in their descriptions of the suspects being excluded from evidence because the trial judge could have determined that they were acting scared or excited, as the officers perceived, even if they genuinely believed they hadn't felt those emotions. (See R. & R. at 39 n.17, 55.) Further, that the Magistrate Judge offered this insight was not improper "extrapolat[ion]" (Objs. at 14) but rather appropriate analysis of how a reasonable factfinder would consider that evidence. Beyond that, whether the victims' statements would have rendered certain parts of the officers' testimony inadmissible has no bearing on whether they establish Petitioner's factual innocence. Indeed, in assessing actual innocence the Court must consider "'all the evidence, old and new, incriminating and exculpatory,' admissible at trial or not." Lee v. Lampert, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (citation omitted) (assessing more lenient actual-innocence standard for equitable exception to time bar); see also King v. Trujillo, 638 F.3d 726, 732 (9th Cir. 2011) (finding that although counsel could have used new evidence to object to admission of certain evidence at trial, that was

12

"irrelevant as to [petitioner's] actual innocence").

The Magistrate Judge also correctly determined that the victims' statements about their demeanor the night of the crime would not have led any reasonable factfinder to conclude that each of the police officers was lying and that they had all conspired to frame Petitioner, which is what Petitioner essentially claims. (See Objs. at 42-43.) As noted, the officers' testimony and the victims' statements were not inconsistent; the jury could have believed that the officers saw the victims as excited while the victims themselves thought they were calm, at least from the vantage point of a decade later. More significantly, an impartial witness testified that shortly after the crimes the victims told her they had been scared (see Lodged Doc. 2, 3 Rep.'s Tr. at 1509), which corroborates the officers' accounts. And Petitioner's suggestion that the officers' testimony was perjured is undermined by his own extensive analysis of the contradictions and weaknesses in it. (See, e.g., Objs. at 45-48, 52-53.) If the officers were in fact lying and conspiring with one another to frame Petitioner, their accounts likely would have been more consistent and inculpatory. See United States v. Nacoechea, 986 F.2d 1273, 1279 (9th Cir. 1993) (noting that prosecutor's argument that witness "told the truth because, if she were lying, she would have done a better job" was proper "inference from evidence in the record").[6]

---

[6] There is no merit to Petitioner's claim that the "Magistrate Court wrongly believes that perjury by the state's witnesses only matters if the prosecutor knowingly put on the testimony." (Objs. at 49.) That legal conclusion is nowhere in
(continued...)

Nor did the victims' 2007 failure to identify Petitioner in a lineup as the man who robbed them and their 2016 statements that he was not the man who robbed them establish his actual innocence. Petitioner claims that the Magistrate Judge improperly rejected those statements as "incredible" (Objs. at 2) without holding a hearing. But although he is correct that the Magistrate Judge identified reasons to question their credibility and factors that undermined the exculpatory value of the statements, the R. & R. makes plain that she accepted for the purposes of her analysis that the victims genuinely believed what they said.

That does not mean, however, that the Magistrate Judge was precluded from considering how much weight those statements would carry with reasonable factfinders. Indeed, she was required to do so in assessing whether any newly discovered evidence was sufficient to establish clearly and convincingly that Petitioner was actually innocent. § 2244(b)(2)(B)(ii). She properly identified the many reasons why the victims' statements had limited exculpatory value and did not establish Petitioner's actual innocence. Likewise, she persuasively identified the

---

⁶(...continued)
the R. & R. In a footnote, the Magistrate Judge cited <u>Hayes v. Brown</u>, 399 F.3d 972, 974 (9th Cir. 2005) (en banc), to point out that Petitioner could not establish prosecutorial misconduct, a claim raised in ground five of the Successive Petition (<u>see</u> Successive Pet. at 74-78), without evidence that the prosecution knowingly acted improperly. (R. & R. at 54-55 n.24.) She did not decide that a petitioner convicted based on false evidence could not pursue a due-process claim unless the prosecutor him- or herself knew the evidence was false (<u>see</u> Objs. at 49-51) and had no reason to do so given that no such claim was raised by Petitioner.

14

ample evidence of Petitioner's guilt that blunted what little exculpatory value the victims' statements had. Indeed, contrary to Petitioner's assertion that "[n]ot one piece of tangible evidence points to [him]" (Objs. at 42), the R. & R. outlines the compelling proof of Petitioner's guilt that corroborates Banuelos's identification testimony, including convicted codefendants Parron and Brown both identifying him as their accomplice, a statement from his girlfriend that she lent him the car used during the robbery, and his resemblance to Chappell's and Farmer's crime-scene descriptions of the gunman and Banuelos's description of the man he saw that night. (R. & R. at 49-50.)

Although Petitioner points out various inaccuracies and inconsistencies in those descriptions, the jury heard all of them and nonetheless credited Banuelos's and the other officers' testimony. See Johnson, 650 F. App'x at 511 (finding that petitioner did not make prima facie showing that codefendant's declaration established his actual innocence even though it undermined some evidence of his guilt). And Petitioner fails to acknowledge that as the Magistrate Judge noted, in assessing his showing of actual innocence the Court must consider all the evidence — including Parron's and Brown's identifications of him as their accomplice — and not just the evidence admitted at trial. (See R. & R. at 27 (citing Lee, 653 F.3d at 938).)

Under these circumstances, the Magistrate Judge was not required to hold a hearing before recommending dismissal of the Successive Petition. Just as in Cox v. Powers, assuming that Farmer and Chappell were credible "in the sense that [they were]

stating what [they] believed [they] saw," that did not "'clear[ly] and convincing[ly]' show[] that no reasonable factfinder would find [Petitioner] guilty." 525 F. App'x 541, 543 (9th Cir. 2013) (citing § 2244(b)(2)(B)(ii)). Although "there would then be directly contradictory eyewitnesses, the jury could have continued to believe that the prosecution witness' testimony was more accurate than that of the defense witnesses." Id. Although Petitioner posits that "[s]imply by reading the transcript, it is obvious that Sgt. Banuelos presented false evidence" (Objs. at 51), apparently the jury did not think so. The R. & R. explains why any reasonable factfinder would have had ample reason to give little weight to Farmer's and Chappell's statements even if the witnesses believed them to be true and how what weight they did deserve was outweighed by the robust other evidence of guilt. See, e.g., McDermott v. Soto, No. CV 16-1888-GW (AGR), 2018 WL 4501170, at *8-9, *11 n.12 (C.D. Cal. Jan. 5, 2018) (dismissing successive petition without holding hearing because even assuming statements in exculpatory declaration were true, "they do not show, clearly and convincingly, that no reasonable jury would have convicted [p]etitioner"), accepted by 2018 WL 4471096 (C.D. Cal. Sept. 17, 2018); Bryant v. Gonzalez, No. CV 10-5137-CAS (SH)., 2012 WL 6012868, at *7 & n.8 (C.D. Cal. Nov. 28, 2012) (same when witness's recantation of identification testimony and allegations of police misconduct did not establish actual innocence), accepted by 2012 WL 6012862 (C.D. Cal. Nov. 30, 2012).

IT THEREFORE IS ORDERED that Respondent's motion to dismiss is granted and judgment be entered dismissing this action with prejudice.

DATED: January 30, 2020

_____
JOHN A. KRONSTADT
U.S. DISTRICT JUDGE